UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

JERRY ANDERSON, II,

        Plaintiff,                Case No. 2:21-cv-125

v.                                      Honorable Robert J. Jonker

K. LARSON,

        Defendant.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

I. **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The

events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues URF Corrections Officer K. Larson.

Plaintiff alleges that on August 7, 2020, he left the dining hall at URF while not wearing a mask. Defendant stopped Plaintiff and ordered that he put on his mask. Plaintiff refused, asserting that because he was eating an apple, Defendant's order was "contrary to DOM 2020-30R3[1] which is a . . . conflicting and superior order." (Compl., ECF No. 1, PageID.4.) Defendant ordered Plaintiff back into the dining hall where Defendant and Captain Burk (not a defendant) again ordered Plaintiff to put on his mask. Defendant again refused citing the DOM and indicating that he would file a grievance against Defendant for harassment. Defendant allegedly ordered Plaintiff to dispose of his apple or he would receive a misconduct report. On August 10, 2020, Plaintiff wrote a grievance reporting Defendant's conduct. Plaintiff's grievance was rejected at Step I on August 12, 2020.

During the evening of August 12, 2020, Defendant walked around URF again with his mask off while eating an apple. Defendant saw Plaintiff and allegedly told him that he would learn the consequences of embarrassing Defendant. Defendant ordered Plaintiff to put on his face mask, but Plaintiff refused, stating that he would comply after he finished eating. Defendant wrote Plaintiff a misconduct report for disobeying a director order (DDO). Plaintiff alleges that Defendant omitted any indication that Plaintiff had been eating an apple at the time. A few minutes later, Defendant allegedly also bent Plaintiff's prison identification card (prison ID).

---

[1] Plaintiff presumably refers to the Director's Office Memorandum (DOM) related to COVID-19, which the MDOC first issued on April 8, 2020. The MDOC issued multiple revised DOMs on the subject, with the third revision (R3) in effect on August 7, 2020. *See* MDOC DOM 2020-30R2 (eff. May 26, 2020) (outlining specific precautions to be taken by staff members, including the use of personal protective equipment and hand sanitizer); MDOC DOM 2020-30R3 (eff. May 27, 2020); MDOC DOM 2020-30R4 (eff. Aug. 10, 2020).

2

Plaintiff alleges that Defendant retaliated against him in violation of the First Amendment. For relief, Plaintiff seeks at least $750,000 in damages and termination of Defendant's employment.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III. Retaliation

Plaintiff alleges that Defendant's conduct constituted relation. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### A. Protected Conduct

Plaintiff presumably intends to allege that filing or threatening to file a grievance on Defendant for harassment was conduct protected under the First Amendment. The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). However, the right to file grievances is protected only insofar as the grievances are

4

not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). As the Supreme Court held in *Lewis v. Casey*, 518 U.S. 343 (1996), "[d]epriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions." *Id.* at 353 n.3.

The circumstances suggest that Plaintiff's grievance for harassment may have been abusive or frivolous, but the Court must "give indulgent treatment to the 'inartfully pleaded' allegations . . . ." *Pasley v. Conerly*, 345 F. App'x 981, 986 (6th Cir. 2009) (quoting *Haines*, 404 U.S. at 520). Plaintiff alleges that during their first interaction, he threatened to and ultimately did file a grievance for harassment against Defendant after Defendant twice ordered him to put on his mask during an ongoing pandemic. Plaintiff further alleges that during the second interaction several days later, he threatened to file a second grievance against Defendant. But Plaintiff concedes that, prior to each interaction, he removed his mask, supposedly so he could eat an apple outside the dining hall. It is hard to see any arguable justification for Plaintiff's actions or claim of harassment, but the Court will assume without deciding that Plaintiff engaged in protected conduct. The Court will return to these circumstances, though, on the causation element.

**B.     Adverse action**

Plaintiff does not clearly articulate what he asserts constitutes an adverse action taken by Defendant. Plaintiff alleged that Defendant ordered Plaintiff to dispose of his apple. Plaintiff further alleged that Defendant reported him for DDO and bent his prison ID.

5

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). To the extent Plaintiff contends that Defendant's order to throw away an apple constituted adverse action, his argument fails. In *Thaddeus-X*, the Sixth Circuit recognized that some threats and deprivations are too minimal to constitute adverse action. Citing *Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982), the *Thaddeus-X* court held that minor harassment is insufficient to constitute adverse action, because recognition of such a standard would "'trivialize the First Amendment.'" *Thaddeus-X*, 175 F.3d at 397 (quoting *Bart*, 677 F.2d at 625). Disposal of a partially eaten apple falls well short of meeting the adverse-action requirement.

However, on initial review, the Court concludes that Plaintiff's allegations that Defendant filed a misconduct charge against him and broke his prison ID sufficiently describe adverse action.

### C. Adverse action motivated by protected conduct

Plaintiff fails to show that Defendant's issuance of a misconduct report or the destruction of Plaintiff's prison ID card were motivated by Plaintiff's protected conduct.

#### 1. Misconduct report

Plaintiff utterly fails to allege facts showing that Defendant reported him for misconduct in retaliation for Plaintiff filing a grievance. Instead, his allegations of retaliatory motive are conclusory and entirely dependent on temporal proximity.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Although in some circumstances temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive[,]'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Defendant's issuance of a misconduct charge was the result of Plaintiff's protected conduct. Indeed, Plaintiff concedes that he had twice disobeyed Defendant's direct order to put on his mask before threatening to file a grievance. Yet, Defendant did not report Plaintiff for misconduct until Plaintiff had disobeyed Defendant's order a third time. Plaintiff cannot simply immunize himself from a misconduct charge for disobeying a direct order by threatening

to file, or indeed filing, a grievance. *See Spies*, 48 F. App'x at 525. He disobeyed a direct order not once but three times. Each refusal constitutes a Class II misconduct, *see* MDOC Policy Directive 03.03.105B (eff. July 1, 2018), and Defendant reported that misconduct. Plaintiff does not allege that Defendant or other corrections officers typically forgo reporting such repeated misconduct. Under the circumstances of this case, temporal proximity falls well short of raising a plausible claim of retaliation. *Iqbal*, 556 U.S. at 678 (requiring more than a sheer possibility that a defendant has acted unlawfully).

Furthermore, to the extent Plaintiff contends that he was merely following the DOM in effect at the time—which he believes contradicted Defendant's order— Plaintiff is utterly mistaken. Under a section mandating the use of personal protective equipment, DOM 2020-30R3 specified that "[a]t a minimum, all staff and prisoners shall always wear a mask, except while eating or showering." *Id.* The DOM did not state that at any time while eating or showering, prisoners shall be permitted to remain maskless; it merely identified two situations during which prisoners *might* be permitted to remove their masks. Consequently, the DOM did not grant prisoners unrestricted authorization to travel without masks through their prisons and in proximity of others so long as they possessed food and consumed it at whatever pace they desired. Yet, Plaintiff's complaint implies that the DOM authorized nothing less. His complaint suggests that, as long as he had started eating an apple but had not yet finished, the DOM permitted him to move about URF, without a mask, passing by staff and prisoners indefinitely. The DOM's exception should be read narrowly to promote the public health objectives envisioned by the full document. *See Comm'r of Internal Revenue v. Clark*, 489 U.S. 726, 739 (1989) ("In construing provisions . . . in which a general statement of policy is qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision."). Permitting Plaintiff's

suggested reading of the exception would threaten the public health of all staff and prisoners in the MDOC facilities. The Court therefore concludes that the DOM merely authorized two activities during which prisoners might be permitted to remove their masks; any more expansive reading asks this Court to interpret the DOM's exception so broadly as to swallow the rule. *See Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 530 (2009) (rejecting an interpretation of a statutory exception that "would swallow the rule").

Moreover, prison staff must maintain some authority to mitigate the serious risk of health or safety posed by spread of COVID-19 in prisons or they may be subjected to claims alleging Eighth Amendment violations. *See Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). In both encounters between Plaintiff and Defendant, Plaintiff concedes that he had walked outside of the URF dining hall. As Plaintiff is undoubtedly aware, since early 2020, the ongoing COVID-19 pandemic has threatened the health of millions around the world including here in the United States. *See A year without precedent: WHO's COVID-19 response*, WHO (Dec. 23, 2020), https://www.who.int/news-room/spotlight/a-year-without-precedent-who-s-covid-19-response.[2] The pandemic has posed

---

[2] The Court takes judicial notice of these facts under Rule 201 of the Federal Rules of Evidence. The accuracy of the source regarding this specific information "cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also* Paul F. Rothstein, *Federal Rules of Evidence* 49 (3d ed. 2019) (citing *Matthews v. NFL Mgmt. Council*, 688 F.3d 1107 (9th Cir. 2012) (taking judicial notice of statistics on the NFL website that the plaintiff played 13 games in California over 19 years); *Victaulic Co. v. Tieman*, 499 F.3d 227, 236-37 (3d Cir. 2007), as amended (Nov. 20, 2007) (finding error where a district court took judicial notice of facts stated in "a party's . . . marketing material" on an "unauthenticated" website because marketing materials often lack precise and candid information and the source was not authenticated)).

Moreover, "[t]he court may take judicial notice at *any* stage of the proceeding." Fed. R. Evid. 201(d) (emphasis added). Thus, the Court may take judicial notice even at this early juncture because the Court is permitted to take judicial notice *sua sponte*, Fed. R. Evid. 201(c)(1), and "the fact is not subject to reasonable dispute," Fed. R. Evid. 201(b).

particular risks within prisons like those controlled by the MDOC. As of June 25, 2021, more than 26,000 prisoners had tested positive for COVID-19 of the approximately 42,000 tested. MDOC, *MDOC Response and Information on coronavirus (COVID-19)*, https://medium.com/@Michigan DOC/mdoc-takes-steps-to-prevent-spread-of-coronavirus-covid-19-250f43144337 (last visited June 28, 2021).[3] More than 140 prisoners have died. *Id.* Nothing in the DOM indicates that prison staff could not make reasonable restrictions calculated to reduce the risk of COVID-19 transmission.

Finally, even if Defendant's orders to put on a mask could be found to have violated the DOM—a highly dubious proposition—Plaintiff was not entitled to disobey the order. Plaintiff does not have the right to determine the validity of an officer's direct orders or to disobey them simply because he disagrees with them. Plaintiff, as a prisoner, is not the arbiter of prison rules.

For all the reasons described above, the Court cannot plausibly infer that Defendant engaged in unlawful conduct when he reported Plaintiff for misconduct. *See Iqbal*, 556 U.S. at 679. Therefore, Plaintiff fails to state a retaliation claim related to his misconduct report.

### 2. Destruction of prison ID

Defendant further alleges that Defendant destroyed Plaintiff's prison ID, which was purportedly motivated by Plaintiff's protected conduct. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). In the context of the allegations above, Defendant's alleged destruction of Plaintiff's prison ID appears entirely motivated by Plaintiff's repeated disobedience, and his flouting of rules

---

[3] Although the page is hosted on Medium.com, the MDOC specifically links to this page from their website as their location Coronavirus information. *See* MDOC Home Page, https://www.michigan.gov/corrections/ (last visited June 28, 2021).

enacted to protect the health of tens of thousands of prisoners and MDOC staff. The Court cannot reasonably infer anything more than the mere possibility that Plaintiff's grievance in any part motivated Defendant to break his prison ID. *See Iqbal*, 556 U.S. at 679. Therefore, Plaintiff fails to state a retaliation claim related to the destruction of his prison ID.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: July 6, 2021          /s/ Robert J. Jonker
                             ROBERT J. JONKER
                             CHIEF UNITED STATES DISTRICT JUDGE