UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JERRY ANDERSON, II #979199,   Case No. 2:21-cv-125

        Plaintiff,   Hon. Robert J. Jonker
                                    U.S. District Judge
v.

K. LARSON,

        Defendant.
_____/

# REPORT AND RECOMMENDATION

**I. Introduction**

This Report and Recommendation (R&R) addresses Defendant's motion for summary judgment due to Plaintiff's failure to exhaust his administrative remedies. (ECF Nos.28.)

State Prisoner Jerry Anderson, II, filed an unverified complaint against Corrections Officer (CO) Larson, pursuant to 42 U.S.C. § 1983. The Court issued an opinion and judgment dismissing the case on July 6, 2021. Anderson filed an appeal. On August 11, 2021, the Sixth Circuit Court of Appeals vacated the judgment in part and remanded the matter for further proceedings. (ECF No. 15.) The remaining issue in this case is whether CO Larson took retaliatory action against Anderson by breaking Anderson's ID card on August 12, 2020. (ECF No. 16, PageID.77.)

CO Larson moves for summary judgment arguing that Anderson failed to properly exhaust administrative remedies. Anderson, who was on modified access to

the grievance procedures, was required to request a Step I grievance form from the grievance coordinator before he filed a grievance. When Anderson submitted his Step I grievance form complaining about the destruction of his ID card, he did not first make a request for a grievance form from the grievance coordinator. Anderson violated MDOC policy by not requesting the form before filing his grievance. The MDOC rejected the grievance on that basis.

    Anderson does not dispute that he improperly filed the rejected Step I grievance. Instead, Anderson argues that he exhausted his remaining claim in a later grievance. That grievance focused on CO Larson's alleged issuance of a retaliatory misconduct ticket, and an alleged due process violation related to the ticket. But at the conclusion of the Step I grievance, Anderson asserted that CP Larson "got angry and then did write the ticket and do the things described in" the rejected Step I grievance. Because Anderson first obtained a Step I grievance form from the Grievance Coordinator, this later grievance was considered on its merits at Step I of the grievance process. It was rejected as untimely at Step II, but Anderson avers that the rejection was improper. Accordingly, Anderson argues that this grievance creates a genuine issue of material fact on the issue of whether he exhausted his administrative remedies. Anderson also complains that he did not have the opportunity to exhaust his remaining claim through the misconduct hearing process because he was found not guilty of the retaliatory misconduct ticket.

    There is no question that the rejected Step I grievance was filed contrary to policy and therefore failed to exhaust Anderson's remaining claim. And although

2

Anderson points to the later-filed grievance as evidence of exhaustion, a review of Anderson's requests for Step I grievance forms reveals that his request focused on First Amendment and due process violations related to a misconduct ticket that CO Larson issued on August 12, 2020; the request said nothing about the destruction of Anderson's ID card. Thus, Anderson never sought or obtained permission to grieve the destruction of his ID card.

While Anderson may argue that the MDOC waived the procedural defect when it considered the later grievance at Step I of the grievance process, the Step I Response reveals that the MDOC did <u>not</u> in fact consider the destruction of Anderson's ID card. Nor was the issue considered on its merits at later steps of the grievance process; the grievance was rejected, whether properly or improperly, at Step II of the grievance process. Accordingly, the MDOC did not waive the procedural defect related to the issue of Anderson's ID card by considering the issue on its merits.

Anderson's final argument similarly falls short; there is no policy or authority that suggests that a prisoner may exhaust ordinary retaliation claims during the misconduct hearing process for an unrelated retaliatory misconduct ticket. As such, it is the opinion of the undersigned that Anderson failed to properly exhaust his available administrative remedies. It is respectfully recommended that the Court grant Defendant's motion for summary judgment.

**II. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be

---

[1]  If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*)  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare

circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id*. (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to

6

resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits.

8

*See id*. at 325.  We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

### IV. Analysis

While he was on modified access to the grievance system, Anderson submitted one grievance explicitly raising the issue that CO Larson broke his ID card. Anderson's grievance was procedurally rejected, because he did not properly obtain the Step I grievance form while on modified access to the grievance system. (ECF No. 29-3, PageID.157.)  However, MDOC Policy Directive 03.02.130 (MM) states that "[w]hile on modified access the prisoner or parolee shall be able to obtain grievance forms only through the Step I Grievance Coordinator.  A grievance form shall be provided if the Step I Grievance Coordinator determines that the issue the prisoner or parolee wishes to grieve is grievable and otherwise meets the criteria outlined in this policy." (ECF No. 29-2, PageID.132.)  The policy requires the Grievance Coordinator to maintain a record of all requests made. *Id*.  Anderson's Step I grievance URF-20-08-2172-28f stated:

---

[2]   In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

9

> | Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
> |---|---|---|---|---|---|
> | Jerry Anderson II | 979199 | URF | N 335 | 8-12-20 | 8-12-20 |
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? 8-12-20
> If none, explain why.
>
> talked to C/O Larson
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.
>
> at or around 1800 hrs on the Nebish unit Base C/O Larson whom I am grieving took my ID and bent it until it snapped. This C/O destroyed my state issued ID card. I request that the video be saved. He did this in order to demean and intimidate and harass me in violation of state law MCLS § 19.142 (e) he also attempted to cause a disturbance under MCLS § 19.142 (g) This was also done in retaliation because he learned of a prior grievance that I had written on him. He kept my ID card also. (I fear further retaliation).
>
> Jerry Anderson II
> Grievant's Signature

(ECF No. 29-3, PageID.156.)

Anderson's grievance was rejected because he did not obtain a grievance form from the first step grievance coordinator as required by policy. The Step I response, which states this rejection, is shown below.

10

> **Michigan Department of Corrections**
> **GRIEVANCE REJECTION LETTER**
>
> **DATE:** Friday, August 14, 2020
>
> **TO:** **ANDERSON**  979199 LOCATION: URF  N  335
>
> **FROM:** M. McLean, Grievance Coordinator
>
> **SUBJECT:** Rejection
>
> Your Step I grievance regarding  **Grievance Rejections**
> was received in this office on  08/14/20  and was rejected due to the following reason:
>
> Your grievance is being rejected for the reason that you are in violation of PD 03.02.130. You are currently on Modified Access Status, as such you are required to procure grievance forms only through the first step grievance coordinator. You need to kite the grievance coordinator about the issue you wish to grieve. At that time the grievance coordinator will determine if the issue you wish to grieve is grievable. If it is so determined a first step grievance form will be forwarded to you.

(*Id.*, PageID.157.) This rejection was upheld at Step II and Step III. (*Id.*, PageID.153, 155.)

Chippewa Correctional Facility Grievance Coordinator Eicher submitted an affidavit stating that a prisoner who is on modified access to the grievance procedures may only obtain a Step I grievance from by submitting a request to the Grievance Coordinator setting forth the basis for the proposed grievance. (ECF No. 24-9, PageID.160 (Affidavit of Eicher).) Eicher confirms that Anderson never made a proper request for the Step I grievance form Anderson used to file <u>URF-20-08-2172-28f</u>.[3] (*Id.*, PageID.161.)

---

[3] Anderson also filed grievance <u>URF-20-08-2152-28f</u> against CO Larson stating that Larson made him throw away an apple and threatened to write him a misconduct. Again, Anderson failed to obtain a Step I grievance form by following the proper modified access to the grievance system procedures before he filed this

As set forth above, Anderson does not dispute that he failed to follow proper procedure to obtain Step I grievance forms while he was on modified access to the grievance system. Instead, Anderson argues that grievance URF 20-09-2455-28e exhausted his claims because he "incorporated" the "content" of his prior grievances into this grievance, and because the grievance was improperly rejected as untimely at Step II of the grievance process. (ECF No. 20, PageID.180.) The Step I grievance stated:

> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. I am grieving C/O Larson because he attempted to and/or violated my due process rights by omitting facts from the body of a misconduct that he had written. I was found not guilty on 8-31-20 and therefore this is a grievable issue. C/O Larson said that he was going to show me what happens when someone embarrasses him in front of his co workers and then files a grievance against him. See (grievance ID URF 2008 2152 28F) he did this in retaliation for my choice to exercise my 1st Amendment rights to file a grievance. He intentionally left out the fact that I was eating a apple because he said that he was the law and that he makes the rules and I better learn to follow them. he said who do you think they will believe me or you?, he said that after I told him that I would write another grievance against him. He then said "you can't write a grievance once you get found guilty of this DDO and I'll make sure that you do buddy" C/O Larson knew that if he wrote that I was eating a apple, I could not be found guilty of DDO because of DOM 2020-30R3. I told him that I would put on my face mask once I was done eating multiple times. He got angry and then did write the ticket & to the things described in grievance ID URF 2008 2172 28F
> Jerry Anderson II
> Grievant's Signature

(ECF No. 30-2, PageID.193.) But while Anderson may have referred to the contents of grievance URF-20-08-2172-28f in grievance URF 20-09-2455-28e, he leaves out two crucial, undisputed facts.

---

grievance. That grievance was also rejected at each step. (ECF No. 29-3, PageID.148-152.) Anderson's modified access status was extended because he "intentionally filed" these two grievances without first obtaining Step I grievance forms from the Grievance Coordinator. (ECF No. 29-4, PageID.167.)

12

First, when Anderson requested the Step I grievance form that became grievance <u>URF 20-09-2455-28e</u>, he made no mention of CO Larson's alleged destruction of his state-issued ID. Instead, Anderson merely stated as follows:



(ECF No. 29-4, PageID.169.)

And when the Grievance Coordinator granted Anderson's request and provided him with the Step I grievance form for grievance <u>URF 20-09-2455-28e</u>, the Grievance Coordinator stated:

13

> DATE: 9/10/20
>
> TO: 979199 Anderson (N-335)
>
> FROM: M. McLean, URF Grievance Coordinator
>
> SUBJECT: Kite Dated 9/2/20
>
> I have enclosed a Step I grievance form for you to pursue your issue regarding being not guilty of "Disobeying a Direct Order."

(*Id.*, PageID.170.)

Because Anderson did not include CO Larson's alleged destruction of his ID card in his request for a Step I grievance form, the Grievance Coordinator did not have the opportunity to review and determine whether that issue was grievable, in accordance with Policy Directive 03.02.130 (MM). Anderson simply tacked on his reference to grievance URF-20-08-2172-28f after he was given the Step I form. Thus, Anderson never truly adhered to the grievance process with respect to his remaining claim.

Second, when the MDOC considered grievance URF 20-09-2455-28e on its merits at Step I of the grievance process, it did not consider the destruction of Anderson's state issued ID as alleged in URF-20-08-2172-28f. The Step I Response for grievance URF 20-09-2455-28e is shown below.

| MICHIGAN DEPARTMENT OF CORRECTIONS | | | | | | CSJ-247S 3/18/2019 |
|---|---|---|---|---|---|---|
| **STEP I GRIEVANCE RESPONSE SUPPLEMENTAL FORM** (Use if space on the CSJ-247A is insufficient for a full response by stating on the CSJ-247A "See attached CSJ-247S") | | | | | | |
| **Prisoner Last Name:** | **Prisoner #:** | | **Lock/Location:** | | | **Grievance #:** |
| Anderson | 979199 | | Neebish/335 | | | URF-20-09-2455-17 B |
| **Prisoner Interviewed:** | YES ☐ | NO ☒ | | **If "NO", Reason:** | | Prisoner at another Facility |
| **Extension Granted:** | YES ☐ | NO ☒ | | **If "YES", Enter End Date:** | | |

**COMPLAINT SUMMARY:**
Prisoner Anderson #979199 alleges officer Larson violated his due process rights by writing a misconduct missing vital information. Anderson also alleges Officer Larson stated that he was the law and he makes the rules.

**INVESTIGATION SUMMARY:**
Prisoner Anderson #979199 could not be interviewed due to ride out to another facility.

I interviewed Officer Larson: He states he did not say any of the statements prisoner anderson alleges. Officer Larson also stated he did not intentionally leave out any facts on the misconduct. Anderson states Officer Larson left out the fact he was eating an apple at the time of the DDO.

**APPLICABLE POLICY, PROCEDURE, ETC.:**
03.03.130

**DECISION SUMMARY:**
After reviewing this Grievence it is found Officer Larson did not violate any due process rights of prisoner Anderson. Officer Larson is found credible in his statement pertaining to the alleged statements made to prisoner Anderson. Prisoner Anderson was found not guilty of the misconduct but was afforded all his due process rights during the misconduct process.

| **RESPONDENT NAME:** | C. Hansen | **TITLE:** | SGT |
|---|---|---|---|
| **RESPONDENT SIGNATURE:** | | **DATE:** | |
| **REVIEWER NAME:** | Watson | **TITLE:** | LT. |
| **REVIEWER SIGNATURE:** | *[signature]* | **DATE:** | 9/23/2020 |

(ECF No. 29-3, PageID.147.)

Furthermore, the MDOC could not have considered the merits of Anderson's remaining claims at Steps II or III of the grievance process because the grievance was rejected as untimely. And while Anderson argues that the rejection was improper, that argument is irrelevant; Anderson did not properly pursue his remaining retaliation claim through the grievance process, and the MDOC did not waive any procedural defects by considering the issue on its merits.

Anderson finally complains that since he was found not guilty of the Class I misconduct ticket underlying grievance <u>URF 20-09-2455-28e</u>, he could not raise and exhaust his remaining claim through the misconduct hearing process. But there is no policy or authority that suggests that a prisoner may exhaust an ordinary retaliation claim during an unrelated misconduct hearing and appeal. Per MDOC policy, Anderson was required to exhaust his remaining retaliation claim through the grievance process. As discussed above, Anderson failed to properly exhaust his claim.

## V. Recommendation

It is respectfully recommended that the Court grant Defendant's motion for summary judgment and dismiss CO Larson without prejudice from this action due to Anderson's failure to properly exhaust administrative remedies.

If the Court accepts this recommendation, this case will be dismissed.

Dated:  January 24, 2024                    /s/ *Maarten Vermaat*
                                            MAARTEN VERMAAT
                                            U. S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).